IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:18CR253** |
| vs. | **FINDINGS AND** |
| | **RECOMMENDATION** |
| CARLOS ELY RAMOS GONZALEZ, | |
| Defendant. | |

This matter is before the Court on Defendant's "Motion to Dismiss - Out of Time – and Request for Hearing" (Filing No. 19).[1] Defendant moves to dismiss the Indictment charging him with illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2), arguing that his 1990 removal was initiated by a defective charging document.

The Court initially granted Defendant's request for an evidentiary hearing and scheduled it for January 8, 2019. However, after the government filed its brief in opposition (Filing No. 24) to the motion, on January 3, 2019, Defendant filed a reply and joint waiver of the evidentiary hearing. (Filing No. 26). The parties do not dispute the authenticity of Defendant's exhibits (Filing No. 20) filed in support of the motion, or the government's exhibits (Filing No. 24) filed in opposition, and the parties agree the Court can rule on the motion without a hearing.[2] Therefore, the Court canceled the evidentiary hearing and the matter is now deemed fully submitted. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be denied.

## BACKGROUND

Deportation proceedings were first commenced against Defendant on September 27, 1988, for entry without inspection. (Filing No. 20-1). On June 5, 1989, an immigration judge denied Defendant's application for asylum and ordered that Defendant be deported to Guatemala.

---

[1] The government does not object to the timeliness of the motion, and under the circumstances set forth by Defendant, the Court finds Defendant has demonstrated good cause for filing the motion past the court's deadline.

[2] Defendant's reply brief identifies the issue before the Court as whether the Immigration Judge had jurisdiction to enter the 1990 removal order and, if not, whether this would render the removal order invalid for purposes of the prosecution in this matter. Nevertheless, the undersigned magistrate judge will fully address the issues raised by Defendant in his motion and brief in support. (Filing Nos. 19, 20).

Defendant's right to appeal was marked "reserved" in the order.  (Filing No. 20-3).  As of August 10, 1990, it appears Defendant's appeal of this removal proceeding was pending.  (Filing No. 24-8).  The record does not contain the result of the appeal, but a report from the U.S. Department of Homeland Security ("DHS") indicates that on January 14, 1991, "[Board of Immigration Appeals] ordered proceedings continued indefinitely."  (Filing No. 24-11 at p. 3).  Defendant was represented by counsel throughout this removal proceeding.

On March 16, 1990, Defendant was convicted under Florida state law for the offense of sale of cocaine.  (Filing No. 24-1).  As a result, a second removal proceeding was initiated against Defendant by an "Order to Show Cause, Notice of Hearing, and Warrant for the Arrest of Alien" ("the OSC") dated April 5, 1990.  (Filing No 20-2).  The OSC reflects that Defendant was served with the OSC and was detained by the Immigration and Naturalization Service ("INS") the following day.  (Filing No. 24-9 at p. 2).  Although the OSC provided Defendant with options to request a redetermination of custody and an expedited hearing, Defendant requested neither.  The OSC notified Defendant that he was to appear for a hearing before an immigration judge at a "location to be set" on a "time and date to be set."  The OSC was written in English.

Defendant was ordered to be removed from the United States on May 17, 1990.  (Filing No. 20-4).  The order provided that Defendant was to be deported from the United States to Guatemala "upon [Defendant's] admissions[.]"  (Filing No. 20-4).  The order also notes that Defendant waived an appeal and that he was served with a copy of the order.  A warrant for Defendant's deportation was issued on May 29, 1990, and Defendant was deported to Guatemala on June 1, 1990.  Defendant's signature and right thumb print were affixed to the deportation warrant form.  (Filing No. 20-5 at pp. 1-2).

According to the DHS's Records, Defendant at some point thereafter reentered the United States.  In September 2006, Defendant was convicted under the name "Jose Luis Martinez" in the United States District Court for the Southern District of New York for Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Possession with intent to Distribute Heroin, and Illegal Re-entry subsequent to Deportation.  (Filing No. 24-2; Filing No. 24-11 at p 2).[3]  Defendant again was removed from the United States in 2010 by Immigration and Customs Enforcement ("ICE").  (Filing No. 24-11 at p. 2).

---

[3] The case was transferred to this district on August 13, 2010.  See Case No. 8:10CR122.

The Indictment in this case alleges that on August 30, 2018, Defendant, who had previously been deported to Guatemala, was found in the United States without the express consent of the Attorney General or Secretary of the Department of Homeland Security. (Filing No. 1). Defendant now moves to dismiss the Indictment by collaterally attacking the May 17, 1990, deportation order. (Filing No. 19). Specifically, Defendant argues that the April 5, 1990, OSC provided inadequate notice of the hearing before the immigration judge because it did not specify the time, date, and location of the hearing. Defendant asserts that due to this failure, the subsequent removal order is void for lack of jurisdiction and for denial of due process. Defendant argues that since the prior removal order is void, he cannot be charged with illegal reentry following a prior removal. Finally, Defendant asserts that his failure to receive proper notice of the deportation hearing is a "structural error that infected the entirety of immigration proceedings" requiring the court to make a finding of fundamental unfairness and prejudice to Defendant. (Filing No. 19).

The government contests Defendant's assertions by arguing that jurisdiction did indeed vest with the immigration court during the 1990 proceedings. (Filing No. 24 at 4). The government asserts that the manner of how and when jurisdiction vests with an immigration court is determined by regulation, rather than statute, and that the OSC contained all the information required by the applicable regulations. (Filing No. 24 at pp. 6-9). The government also asserts that Defendant failed to meet his burden to demonstrate any resulting prejudice.

## ANALYSIS

To convict a noncitizen defendant of illegal reentry, the government must prove the defendant: (1) is not a citizen of the United States; (2) was previously ordered removed and was removed from the United States; and following that removal, (3) entered, attempted to enter, or was found back in the United States without the consent of the United States government. 8 U.S.C. § 1326(a). Defendant collaterally attacks the May 1990 removal order forming the basis of this prosecution. A defendant "bears the burden of proof in a collateral attack upon a prior deportation." *United States v. Tamayo-Baez*, 820 F.3d 308, 313 (8th Cir. 2016)(quoting *United States v. Martinez-Amaya*, 67 F.3d 678, 681-82 (8th Cir. 1995)).

### A. Jurisdiction

Defendant's motion to dismiss is primarily based on his contention that the immigration court lacked jurisdiction to enter the May 1990 deportation order, rendering the order void. Specifically, Defendant argues that the OSC[4] dated April 5, 1990, did not contain the time, date, and place of the removal hearing, which information was necessary to confer jurisdiction on the immigration court. Defendant, like a growing number of defendants in illegal reentry prosecutions in district courts across the country,[5] derives this jurisdictional argument from *Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018), wherein the Supreme Court concluded that, under the plain text of the statute, a "notice to appear" (hereinafter "NTA") under 8 U.S.C. § 1229(a) must specify the time and place of a noncitizen's removal proceedings.

This jurisdictional argument generally goes as follows: under the applicable regulations, "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court[.]" *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1166 (E.D. Wash. July 26, 2018)(quoting 8 C.F.R. § 1003.14(a)). For immigration proceedings initiated after April 1, 1997, a charging document includes, among other documents, an NTA. *Id.* (quoting 8 C.F.R. § 1003.13). Relying on *Pereira*'s language that says, "A document that fails to include [the time and place of removal proceedings] is not a 'notice to appear under section 1229(a),'" some district courts have concluded that an NTA that omits the time and place of removal proceedings is a defective charging document that cannot confer jurisdiction over removal proceedings. See *id.* at 1165-66 (quoting *Pereira*, 138 S. Ct. at 2113-14). If a defendant's prosecution for illegal reentry rests on a removal order entered by an immigration court that did not have jurisdiction (as Defendant in this case asserts), then the indictment must be dismissed. *Id.* at 1166.[6]

---

[4] For proceedings initiated before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in April 1997, a charging document included an Order to Show Cause, while under IIRIRA, a charging document includes a Notice to Appear. See 8 U.S.C. § 1251b(a)(1) (1988 & Supp. V 1993).

[5] See, e.g., *United States v. Lozano et al*, No. 4:18-CR-522, 2019 WL 224178, at *10 (S.D. Tex. Jan. 15, 2019)(collecting cases).

[6] See also *United States v. Pedroza-Rocha*, No. EP-18-CR-1286-DB (W.D. Tex. Sep. 21, 2018) (Dkt. No. 53) (unpublished); and *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018) *opinion superseded on reconsideration*, No. SA-18-CR-00343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018).

The reasoning in *Virgen-Ponce* and its application of *Pereira* has been rejected by the majority of district courts presented with the issue, including within this district.[7]  The undersigned magistrate judge agrees with these well-reasoned opinions rejecting *Virgen-Ponce*.  First, as those courts recognized, the issue before the Supreme Court in *Pereira* was extremely narrow.  *Pereira* dealt with a noncitizen in a civil removal proceeding seeking cancellation of his removal order under 8 U.S.C. § 1229b(b)(1) based on his continuous physical presence in the United States for more than ten years.  *Pereira*, 138 S. Ct. 2109.  Under the statute section known as the "stop-time rule," however, once an alien is served with an NTA under section 1229(a), "'any period of . . . continuous physical presence is 'deemed to end[.]'"  *Id.* (quoting 8 U.S.C. § 1229b(d)(1)(A)).  Because the noncitizen in *Pereira* previously had been served with an NTA, the Immigration Court found the stop-time rule had been triggered.  *Id.* at 2112.  However, the NTA only provided that the hearing would be held "on a date to be set at a time to be set;" as a result, the noncitizen did not appear at the hearing and was ordered to be removed in absentia.  *Id.*  The Supreme Court in *Pereira* granted certiorari "to resolve division among the Courts of Appeals on a simple, but important, question of statutory interpretation: Does service of a document styled as a 'notice to appear' that fails to specify 'the items listed' in § 1229(a)(1) trigger the stop-time rule?"  *Pereira*, 138 S. Ct. at 2113.  The Supreme Court answered that question in the negative, concluding that because § 1229(a)(1) requires an NTA to specify the time and place of removal proceedings, the stop-time rule is not triggered by an NTA that does not contain that information.  *Id.* at 2114.

The Supreme Court in *Pereira* did not address, or even mention, when an immigration court obtains jurisdiction over an immigration proceeding.  See *United States v. Rivera Lopez*, 2018 WL 6834363, at *5 (E.D. Va. Dec. 28, 2018)("Nothing in *Pereira* addressed the immigration judge's underlying jurisdiction.");  *Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1117 (S.D. Cal. July 6, 2018)("Nothing in *Pereira* suggests that the failure to specify the date and time of removal proceedings in 8 U.S.C. § 1229(a) voids the commencement of removal proceedings.").  Nevertheless, regardless of whether the Eighth Circuit or Supreme Court extends *Pereira*'s holding

---

[7] See *United States v. Duarte*, Case No. 4:18CR3083, 2018 WL 6493090 (D. Neb. Nov. 30, 2018)(Zwart, M.J.) *report and recommendation adopted*, 4:18CR3083, 2018 WL 6492750 (D. Neb. Dec. 10, 2018); *United States v. Escobar*, No. 4:18CR3090, 2018 WL 6566001 (D. Neb. Nov. 30, 2018)(Zwart, M.J.), *report and recommendation adopted*, No. 4:18CR3090, 2018 WL 6529487 (D. Neb. Dec. 12, 2018); *United States v. Rivera*, Case No. 8:18CR289 (D. Neb. Jan. 7, 2019)(Bazis, M.J); see also, *Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332717, at *8 (D. Minn. Nov. 15, 2018), *report and recommendation adopted*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332507 (D. Minn. Dec. 4, 2018)(citations omitted)("The *Virgen-Ponce* reasoning has been widely criticized elsewhere.").

to the extent sought by Defendant, the undersigned magistrate judge concludes that *Pereira* does not apply to the removal proceedings at issue in this case.  *Pereira* solely discussed § 1229(a) and the requirements of an NTA under that statute section, which became effective on April 1, 1997, with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").  In this case, Defendant's removal hearing took place in 1990, before the enactment of IIRIRA.  Accordingly, Defendant's removal hearing was governed by the pre-IIRIRA statute, 8 U.S.C. § 1252b(a)(1) (1988 & Supp. V. 1993).  Pre-IIRIRA, immigration proceedings were commenced by a charging document that included an Order to Show Cause, not an NTA.  See 8 U.S.C. 1252b(a); 8 C.F.R. § 3.14(a); see also *United States v. Mendez-Bello*, No. 18-CR-3676-GPC-1, 2018 WL 6649512, at *2 (S.D. Cal. Dec. 19, 2018)("Even assuming arguendo that *Pereira*'s holding can be extended beyond the context of the stop-time rule from which it originated . . . *Pereira* cannot go so far as to require the invalidation of [the defendant's] four pre-IIRIRA removal orders. Critically, those orders were initiated pursuant to Section 1252(a)(1), not Section 1229(a)(1).").

Congress provided the Attorney General with authority to establish regulations governing removal proceedings.  See 8 U.S.C. § 1252(b)("Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this Act, as the Attorney General shall prescribe.").  At the time Defendant's deportation proceedings commenced, the applicable regulation, 8 C.F.R. § 3.14(a), provided that "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service[.]"  8 C.F.R. § 3.14(a).  The relevant charging document, an OSC, was required to contain the following information:

(1) The nature of the proceedings against the alien;
(2) The legal authority under which the proceedings are conducted;
(3) The acts or conduct alleged to be in violation of law;
(4) The charges against the alien and the statutory provisions alleged to have been violated;
(5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 CFR 292.1;
(6) The address of the Office of the Immigration Court where the Service will file the Order to Show Cause; and
(7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 3.26.

8 C.F.R. § 3.15(b).  Under the applicable regulations, then, an OSC was not required to provide the time and place of hearing. See 8 C.F.R. § 3.15.

In this case, review of the April 1990 OSC served on Defendant demonstrates that it contained all of the information required by the applicable statute and regulation.  See (Filing No. 20-2).  Although the OSC did not include the date and time of the removal hearing, it nevertheless included all the information necessary to vest jurisdiction under the express terms of 8 C.F.R. 3.15(b).  Therefore, the OSC properly vested the immigration court with jurisdiction to issue the May 1990 deportation order.  Accordingly, the undersigned magistrate judge finds that the removal order forming the basis of this prosecution is not void *ab initio* for lack of subject-matter jurisdiction.

### B.    Collateral Attack

Aside from his jurisdictional challenge, Defendant argues that fundamental defects in the process deprived him of judicial review and rendered the entry of the removal order fundamentally unfair. A defendant may challenge the underlying removal order "where the defects in an administrative proceeding foreclose judicial review of that proceeding," without an "alternative means of obtaining judicial review[.]"  *United States v. Mendoza-Lopez*, 481 U.S. 828, 841-42 (1987).  Subsequent to *Mendoza-Lopez*, Congress enacted 8 U.S.C. § 1326(d), which codified the requirements a noncitizen must establish to collaterally attack an underlying deportation. The noncitizen must demonstrate:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  "The defendant must meet all three requirements in order to successfully collaterally attack the prior removal order."  *United States v. Tamayo-Baez*, 820 F.3d 308, 313 (8th Cir. 2016).

With respect to § 1326(d)(1), Defendant contends that any failure to exhaust administrative remedies is excused because the immigration court lacked jurisdiction to enter the May 1990

deportation order, rendering the order void. (Filing No. 20 at p. 11). And as to § 1326(d)(2), Defendant asserts that he "cannot be said to have been given the opportunity for judicial review without the date and time of his hearing." (Filing No. 20 at p. 10). As discussed above, nothing in the applicable regulations required the OSC to contain the time and date of the removal hearing to confer jurisdiction on the immigration court, and the record is clear that Defendant failed to exhaust administrative remedies. Moreover, the record indicates that Defendant did receive actual notice of the hearing. The record does not reflect that Defendant was removed in absentia, the May 1990 deportation order stated that Defendant was to be deported from the United States to Guatemala "upon [Defendant's] admissions," and noted that Defendant waived an appeal. (Filing No. 20-4). Defendant did not argue or present evidence that his waiver was unknowing or involuntary. See *Tamayo-Baez*, 820 F.3d at 313 ("If an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under 1326(d)(1)."). Defendant therefore failed to carry his burden to show he exhausted administrative remedies and that he was deprived of an opportunity for judicial review.

Defendant also argues that the notice to appear in the OSC was insufficient rendering the May 17, 1990, removal order fundamentally unfair in violation of due process under § 1326(d)(3). To prove that a removal order was "fundamentally unfair in violation of due process," a defendant "must show both 'a fundamental procedural error' and actual prejudice.'" *United States v. Santos-Pulido*, 815 F.3d 443, 445 (8th Cir. 2016)(quoting *United States v. Torres-Sanchez*, 68 F.3d 227, 229 (8th Cir. 1995)). "Prejudice in this context means 'a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *United States v. Avila*, 522 F. App'x 369, 371 (8th Cir. 2013)(quoting *United States v. Mendez-Morales*, 384 F.3d 927, 931-32 (8th Cir. 2004)). "Due process necessitates that a non-citizen be provided notice of the charges he faces, a fair hearing, and an opportunity to be heard." *Escobar*, 2018 WL 6566001 at *5 (citing *United States v. Santos Larios-Ajualat*, 2018 WL 5013522 (D. Kan. 2018); *United States v. El Shami*, 434 F.3d 659, 665 (4th Cir. 2005)). "A non-citizen could be unduly subjected to prejudice by an OSC's (or NTA's) failure to include the date and time of a removal hearing by causing the defendant to miss the hearing, depriving him of a meaningful opportunity to confer with counsel, or by leaving the defendant insufficient time to adequately prepare for the hearing." *Id.* (citing *Pereira*, 138 S. Ct. at 2115).

Defendant asserts that the insufficient notice deprived him of judicial review and may have precluded him from obtaining the assistance of counsel or becoming eligible for relief from removal. The record before this court does not indicate when Defendant was notified of the May 17, 1990, hearing or whether he was represented by counsel. Nevertheless, Defendant has failed to meet his burden to establish he was prejudiced by the OSC's failure to specify a time and date of the hearing. Again, the record suggests that Defendant did appear at the hearing. The record does not reflect that Defendant was removed in absentia, and indeed, the deportation order states it was based upon "Defendant's admissions[.]" (Filing No. 20-4).

More importantly, Defendant has not shown that but for the deficient notice to appear, he would not have been deported. See *Avila*, 522 F. App'x at 371 ("Prejudice . . . means 'a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'"). Defendant presented no evidence or facts explaining how his personal circumstances, if known by the immigration court, could have altered the outcome of his removal proceeding. And, had Defendant filed an appeal, it is unlikely his appeal would have been successful given his criminal conviction in Florida for sale of cocaine. See *United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995)(concluding a previously convicted drug trafficker was presumed to be deportable; therefore "whatever the procedural defects at his deportation hearing, the appellee would have had no chance of winning an appeal.")(internal quotation marks omitted). Additionally, Defendant's deportation order and denial of asylum that commenced in September 1988 – prior to the deportation order Defendant attacks in this case – indicate that Defendant's appeal of the May 1990 deportation order would not have been successful. In sum, Defendant has failed to show that but for the errors complained of in the 1990 deportation proceedings, there was a reasonable probability that he would have not been deported. Because Defendant has not established prejudice, his arguments regarding fundamental fairness and structural error are without merit.

Based on the record before the Court, Defendant has not met his burden to demonstrate that all of the elements of 8 U.S.C. § 1326(d) exist to collaterally attack the May 1990 deportation order. Accordingly, the undersigned magistrate judge recommends that Defendant's motion to dismiss be denied.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert F. Rossiter, Jr., that Defendant's Motion to Dismiss - Out of Time – and Request for Hearing (Filing No. 19) be denied.

Dated this 11th day of February, 2019.


BY THE COURT:


s/ Michael D. Nelson
United States Magistrate Judge


**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.